IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | No. 3:10cv2486 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CHRIS KRAYNAK and NAK'S BY | : | |
| THE TRACKS *d/b/a* KNACK AT THE | : | |
| TRACKS *a/k/a* NAK'S BY THE | : | |
| TRACKS, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition are two motions.  First, Plaintiff J & J

Sports Productions, Inc. moves for summary judgment. (Doc.  26).

Second, defense counsel moves to withdraw as attorney for defendants.

(Doc. 35).  For the following reasons, plaintiff's motion for summary

judgment will be granted, in part, and denied, in part, and defense

counsel's motion to withdraw will be denied.

## Background

Plaintiff J & J Sports Productions, Inc. (hereinafter "plaintiff") is a

closed-circuit distributor of sports and entertainment programing.  (Doc. 26-

5, Aff. of Joseph M. Gagliardi (hereinafter "Gagliardi Aff.") ¶ 3).

Defendants Chris Kraynak and Nak's by the Tracks *d/b/a* Knack at the

Tracks *a/k/a* Nak's by the Tracks (hereinafter "defendants") are the owners

and operators of a commercial establishment (hereinafter "defendants' bar") located in Exeter, Pennsylvania 18643.  (Doc. 26-2, Pl.'s Statement of Material Facts (hereinafter "SOF") ¶ 3; Doc. 17, Aff. in Supp. of Mot. to Set Aside Default J. (hereinafter "Def. Aff.") ¶¶ 1-2).  Plaintiff purchased and retains the commercial exhibition licensing rights to a boxing match, *Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program* (hereinafter the "program").  (SOF ¶¶ 1-2). The program was telecast nationwide on Saturday, December 6, 2008.  (Id.)

On December 6, 2008, Janis Bianco, an investigator working for plaintiff, entered defendants' bar at 10:54 p.m. (Doc. 26-4, Aff. of Janis Bianco (hereinafter "Bianco Aff") at 2).  Bianco did not pay a cover charge to enter defendants' bar and stayed until 11:56 p.m. (Id. at 2-3).  Although defendants' bar has an occupancy for forty to fifty (40-50) people, Bianco counted thirty (30) patrons in defendants' bar.[1]  (Id.)  Additionally, Bianco observed three televisions.  (Id. at 2).  Two smaller televisions were broadcasting a football game.  (Id.)  A larger fifty-two (52) inch television was broadcasting the program.  (Id.)

---

[1] An establishment with a seating capacity of fifty (50) would have paid a $2,200.00 license fee to broadcast the program.  (Gagliardi Aff. ¶ 8).

On December 3, 2012, plaintiff filed a complaint alleging defendants'

willfully broadcast the program without paying a licensing fee thereby

violating the Communications Act of 1934, 47 U.S.C. § 605 et seq. and the

Cable and Television Consumer Protection and Competition Act of 1992,

47 U.S.C. § 553 et seq.[2]  (Doc. 1, Compl. (hereinafter "Compl.")).

 Plaintiff seeks $10,000 in statutory damages pursuant to 47 U.S.C. §

605(e)(3)(C)(i)(II), $100,000 in enhanced damages pursuant to 47 U.S.C. §

650(e)(3)(C)(ii) and attorney's fees and costs pursuant to 47 U.S.C. §

605(e)(3)(B)(iii).  (Id.)  Plaintiff also seeks to hold Defendant Chris Kraynak

individually liable.

On August 4, 2011, the Honorable Richard P. Conaboy granted

default judgment for the plaintiff.  (Doc. 16).  Defendants subsequently filed

a motion to set aside the default judgment (Doc. 17) and the case was

reassigned to the undersigned judge.

On August 24, 2011, the court set aside the default judgment and

---

[2]Plaintiff seeks summary judgment only on 47 U.S.C. § 605, pursuant to TKS Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001). (Doc 26-1, Br. in Supp. of Pl.'s Mot. for Summ. J. at 3 n.1); see also J & J Sports Prods., Inc. v. Potions Bar & Lounge, Inc., No. 1:08-CV-1825, 2009 WL 763624 at *4 (E.D.N.Y. Mar. 23, 2009) (holding that a court is not permitted to award damages under both 47 U.S.C. § 553 and 47 U.S.C. § 605 for a single transmission).

ordered defendants to file an answer or other responsive pleading within ten (10) days.  (Doc. 19).  Defendants filed an answer on September 2, 2011 (Doc. 21) and a case management conference was held on November 3, 2011 (Doc. 25).

Subsequent to the case management conference, plaintiff filed a motion for summary judgment and a brief in support thereof.  (Doc. 26).  Defendants filed a motion for an extension of time to file a brief in opposition to plaintiff's motion for summary judgment because the parties were engaged in settlement talks.  (Doc. 27).  The court granted defendants' request for an extension of time and ordered defendants to file a brief in response to plaintiff's motion for summary judgment by August 10, 2012.  (Doc. 29).

On August 10, 2012, plaintiff filed a notice of settlement.  (Doc. 30).  The court dismissed the case and provided the parties sixty (60) days to consummate the settlement.  (Doc. 31).

Plaintiff filed a notice on September 28, 2012, to withdraw the settlement and moved for the action to be reinstated.  (Doc. 32).  The court ordered the case be re-opened and directed defendants to file a brief in opposition to plaintiff's motion for summary judgment within three (3)

weeks.  (Doc. 33).  As a result of defendants' failure to file a timely brief,

the court ordered defendants to file a response to plaintiff's motion for

summary judgment within ten (10) days.  (Doc. 34).  The court warned that

if a timely brief was not filed, the court would deem the motion unopposed

and all the factual averments made in the motion would be accepted as

true.  (Id.)

No opposition brief was filed, and the deadline for its filing has

passed.  Finally, defendants' attorney filed a motion to withdraw as counsel

on November 20, 2012 (Doc. 35) bringing this case to its present posture.

## JURISDICTION

As this case is brought pursuant to the Communications Act of 1934,

47 U.S.C. § 605 *et seq*., and the Cable and Television Consumer

Protection and Competition Act of 1992, 47 U.S.C. § 553 et seq., the court

has federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.").

## LEGAL STANDARD

Granting summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A fact is material if it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477

U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the non-moving party, who must go beyond its pleadings,

and designate specific facts by the use of affidavits, depositions,

admissions, or answers to interrogatories showing that there is a genuine

issue for trial.  Id. at 324.

**DISCUSSION**

Plaintiff moves for summary judgment on four issues: (1) Liability; (2)

Damages–both statutory and enhanced; (3) Attorney's Fees; and (4)

Liability of the Individual Defendant.  We will address the issues *in seriatim*.

Prior to addressing plaintiff's four issues, the court notes defendants

failed to submit a brief in opposition to plaintiff's motion for summary

judgment.  According to the local rules, the statement of material facts as

submitted by plaintiff is deemed admitted.  L.R. 7.6, 56.1.  Thus, to

determine whether summary judgment is appropriate, we must determine

whether "the facts specified in or in connection with the motion entitle the

moving party to judgment as a matter of law."  Anchorage Assocs. v. V.I.

Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir.1990).

Furthermore, defendants failed to object or otherwise respond to

plaintiff's request for admissions within thirty (30) days.  Pursuant to the

Federal Rules of Civil Procedure, "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3); see also Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) (explaining that a request for admission was properly deemed admitted under Rule 36(a) for purposes of a motion for summary judgment because it was not denied), cert. denied, 429 U.S. 1038 (1977). Plaintiff's request for admissions are thus admitted.

A. Liability

Plaintiff seeks to hold defendants liable under 47 U.S.C. § 605 (hereinafter "Section 605"). Section 605(a) prohibits the unauthorized interception and exhibition of communications. Specifically, to establish a violation of Section 605(a) plaintiff must show that defendants intercepted a broadcast, were not authorized to intercept the broadcast, and showed the broadcast to others.

In this regard, plaintiff has established undisputed facts to support all the elements of Section 605(a). Plaintiff lawfully purchased the commercial exhibition license rights to the program. (SOF ¶ 2; Gagliardi

Aff. ¶ 3).   Defendants never paid a licensing fee to broadcast the program.

(SOF ¶ 5).  An investigator entered defendants' bar on December 6, 2008

and observed a fifty-two (52) inch projection television broadcasting the

program.  (SOF ¶ 4,8; Bianco Aff. at 1-3).  Accordingly, the court finds no

genuine issue of material fact pertaining to liability under Section 605(a).

B. Damages

Because liability has been established under Section 605(a), we turn

our attention to damages.  The law provides for statutory and enhanced

damages. In the present case, plaintiff seeks to be compensated for both.

As such, we will address each category of damages separately.

1.  Statutory Damages

Section 605 allows any person aggrieved to collect statutory

damages.  See 47 U.S.C. § 605(e)(3)(C)(i)(II).  A single violation of Section

605 permits statutory damages of "not less than $1,000 or more than

$10,000."[3]  47 U.S.C. § 605(e)(3)(C)(i)(II); DIRECTV, Inc. v. Walsh, 540 F.

---

[3]Most cases applying this statute in a commercial context have
interpreted the showing of an event on a single night as one violation.  See
e.g., Kingvision Pay-Per-View, LTD. v. Lardo, 2:10-CV-0059, 2010 WL
3463316 at *2 (W.D. Pa. Sept. 1, 2010); Time Warner Cable v. Taco
Rapido Rest., 988 F. Supp 107, 110-11 (E.D.N.Y. 1997).  Accordingly, as
plaintiff's evidence indicated that the event was illegally broadcast at
defendants' bar on December 6, 2008, the court calculates damages

Supp. 2d 553, 560 (M.D. Pa. 2008).  "The specific amount of statutory

damages assessed pursuant to Section 605 rests within the sound

discretion of the court."  Walsh, 540 F. Supp. 2d at 560; (citing DIRECTV

v. Haskell, 344 F. Supp. 2d 761, 763-64 (D. Me. 2004)).  Here, plaintiff

seeks the maximum statutory damage award of $10,000.

Plaintiff advances two arguments for a maximum statutory damages

award: (1) plaintiff seeks to be made whole; and (2) plaintiff seeks to deter

future piracy.  First, the program's rate card indicates defendants would

have paid plaintiff $2,200 to lawfully broadcast the program.  As a result, a

statutory award in the amount of $2,200 is warranted to make plaintiff

whole.

Second, plaintiff seeks the maximum statutory damage award to

deter piracy.  United States District Courts within the Third Judicial Circuit

have approved the award of statutory damages in excess of actual

damages for the purpose of deterrence.  Kingvision Pay-Per-View, LTD. v.

Lardo, 2:10-CV-0059, 2010 WL 3463316 at *3 (W.D. Pa. Sept. 1, 2010); J

& J Sports Prods., Inc. v. Gallegos, No. 2:08-CV-0201, 2008 WL 3193157

at *4 (D.N.J. Aug. 5, 2008); Comcast Cable Co. v. Bowers, No. 2:06-CV-

---

based on one violation of Section 605(a).

1664, 2007 WL 1557510 at *4-5 (D.N.J. May 25, 2007).

However, district courts within the Third Judicial Circuit have also acknowledged that when a large discrepancy exists between actual damages ($2,200) and maximum statutory damages ($10,000), an award of maximum statutory damages is not appropriate despite its deterrent effect. J & J Sports Prods., Inc. v. Gencarelli, 2:10-CV-4375, 2012 WL 4442514 at *2 (E.D. Pa. Sept. 21, 2012); J & J Sports Prods., Inc. v. Edrington, 2:10-CV-3789, 2012 WL 525970 at *4 (D.N.J. Feb. 16, 2012); J & J Sports Prods., Inc. v. Perdomo, 2:06-CV-1374, 2007 WL 923522 at *4 (D.N.J. March 26, 2007); J & J Sports Prods., Inc. v. Munguti, 2:06-CV-1282, 2007 WL 928479 at *3-4 (D.N.J. March 27, 2007).

Taking such factors into consideration, the court concludes a statutory damage award of $6,600 is appropriate under the circumstances. The court finds this sum sufficient to fully compensate plaintiff for lost profits as well as to deter defendants and others like them from engaging in future piracy. This amount is also "a recognition that the maximum statutory damages should be reserved for cases where there is evidence of more substantial injury to the plaintiff or profit by the defendants." Kingvision Pay-Per-View Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442

11

(S.D.N.Y. 2001).  As such, the court will award plaintiff $6,600 in statutory damages.

2.  Enhanced Damages

In addition to statutory damages, plaintiff seeks the maximum amount of enhanced damages, $100,000.  Section 605 allows for enhanced damages, not to exceed $100,000, where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 650(e)(3)(C)(ii).  Thus, plaintiff must prove: (1) defendants willfully violated Section 605(a); and (2) defendants willful violation was for direct or indirect commercial advantage or private financial gain.  We address each element in turn.

a.  Willful Violation of Section 605(a)

As a general rule, the Supreme Court has defined "willful" conduct as actions "marked by [the] careless disregard [for] whether or not one has the right so to act."  United Airlines Inc. v. Thurston, 469 U.S. 111, 127 (1985) (citing United States v. Murdock, 290 U.S. 389, 395 (1933)); see also Broadcast Music, Inc. v. It's Amore Corp., No. 3:08-CV-0570, 2009 WL 1886038 at *7 (M.D. Pa. June 30, 2009) (defining willful conduct in a

copyright infringement case).

Plaintiff argues defendants' willfulness is found within plaintiff's request for admissions which contains a statement that defendants willfully exhibited the program.  (Req. for Admins. ¶ 31).  Defendants failed to object or otherwise respond to plaintiff's request for admissions within thirty (30) days.  Thus, defendants' statement is admitted, and plaintiff has established defendants willfully violated Section 605(a).

b.  Direct or Indirect Commercial Advantage or Private Financial Gain

The District Court of New Jersey has compiled factors illustrating direct or indirect commercial advantage or private financial gain.  In Munguti, the court explained that the number of televisions broadcasting the event, existence of a cover charge, sale of food or drink, advertisement of the event in the defendants' bar, and a demonstration that defendants made more money or conducted additional business by illegally broadcasting the event are pertinent factors to be considered in determining enhanced damages. 2007 WL 928479 at *3.

When the instant case is analyzed under the Munguti factors, it is apparent plaintiff has not established direct or indirect commercial advantage or private financial gain.  Specifically, plaintiff has failed to

13

provide evidence that defendants charged a premium on food and drinks.

Plaintiff has failed to provide evidence that defendants advertised plaintiff's

program prior to December 6, 2008.  Moreover, plaintiff has failed to

provide evidence that defendants derived significant profit from

broadcasting the program.  In fact, plaintiff's own investigator stated

defendants were not charging a special cover charge on the night of

December 6, 2008.  (Bianco Aff. at 2).  Plaintiff's failure to prove direct or

indirect commercial advantage or private financial gain is fatal to their

claim.  As a result, the court declines to award enhanced damages.

C. Attorney's Fees and Costs

Plaintiff has sought an award of litigation costs and attorney's fees

pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in which a court "shall direct the

recovery of full costs, including awarding reasonable attorney's fees to an

aggrieved party who prevails."  The plain wording of the statute allows

plaintiff to recover its full costs and reasonable attorney's fees.  Therefore,

plaintiff shall be given fourteen (14) days to submit evidence of its costs

and reasonable attorney's fees.

D. Individual Liability

The final issue we must address is whether Defendant Chris Kraynak

14

is liable in his individual capacity.  In order to impose individual liability, plaintiff must prove: (1) Defendant Kraynak had both the right and ability to supervise the infringing activity; and (2) Defendant Kraynak received a direct financial benefit from such activity.  DIRECTV v. Cibulka, No. 1:11-CV-0231, 2011 WL 3273058 *1 (M.D. Pa. July 29, 2011) (citing Parker v. Google, Inc., 242 F. App'x 833, 837 (3d Cir. 2007); Joe Hand Promotions, Inc. v. Angry Ales, Inc., No. 3:06-CV-73, 2007 WL 3226451 at *4 (W.D.N.C. Oct. 29, 2007).

1.  Ability to Supervise

The first step assesses whether Defendant Kraynak had a "right and ability to supervise" the infringing activity.  Cibulka, 2011 WL 3273058 at *1; J & J Sports Prods. v. Benson, No. 1:60-CV-1119, 2007 WL 951872 at *7 (E.D.N.Y. March 27, 2007) (citations omitted).  An individual defendant has the right and ability to supervise if they possess dominion, control and/or oversight of a commercial establishment's activities.  Cibulka, 2011 WL 3273058 at *4; Benson, 2007 WL 951872 at *7; Angry Ales, Inc., 2007 WL 3226451 at *4.  Plaintiff states Defendant Kraynak is an officer, director and/or principal with dominion, control and oversight over the airing of plaintiff's program.  (SOF ¶¶ 6, 11).  Defendants failed to submit a brief in

opposition to plaintiff's motion for summary judgment.  According to the local rules, plaintiff's statement of material facts are admitted.  Thus, the court will find Defendant Kraynak was a person with a right and ability to supervise the infringing activity.

2.  Direct Financial Benefit

Having found Defendant Kraynak had the ability to supervise the infringing activity, we address whether Defendant Kraynak received a direct financial benefit from such activity.  Courts consider a direct financial benefit to be present when the infringing materials act as a draw for customers.  <u>Parker</u>, 242 F. App'x at 837 (citing <u>Ellison v. Robertson</u>, 357 F.3d 1072, 1078 (9th Cir. 2004).  "The draw for customers based upon the infringing materials need not be substantial."  <u>Ellison</u>, 357 F.3d at 1079.

Plaintiff makes three arguments to prove direct financial benefit: (1) Defendant Kraynak required its patrons to pay a cover charge to enter defendants' bar on the night plaintiff's program was broadcast; (2) Defendant Kraynak advertised ahead of time that the program would be telecast at defendants' bar; and (3) Defendant Kraynak is sole shareholder of Nak's by the Tracks.  However, a deeper inquiry into plaintiff's three arguments does not support a finding of direct financial benefit.

First, plaintiff states Defendant Kraynak "required its patrons or clientele to pay a cover charge or other fee to enter . . . ." (SOF ¶ 12(c); Req. for Admins. ¶ 14). However, Investigator Bianco states she did not pay a cover charge. (Bianco Aff. at 2). Additionally, Bianco did not witness any other patron pay a cover charge. (Id. at 2-3). Thus, plaintiff has failed to prove Defendant Kraynak required its patrons to pay a cover charge.

Second, plaintiff claims Defendant Kraynak "advertised ahead of time that the program would be telecast within defendants' bar." (SOF ¶ 12(c); Req. for Admins. ¶ 9). But, Bianco's affidavit fails to mention any billboards, fliers or posters inside or outside defendants' bar advertising the program. (Bianco Aff. at 2-3). On the contrary, Bianco observed the following distinguishing items inside defendants' bar: a dart board and a beer sign in the window. (Id. at 2). As such, plaintiff has failed to prove Defendant Kraynak advertised plaintiff's program.

Finally, plaintiff argues Defendant Kraynak received a direct financial benefit from airing plaintiff's program because he is the sole shareholder of Nak's by the Tracks. Although proof Defendant Kraynak is the sole shareholder satisfies the first step of the individual liability test (ability to supervise) it is insufficient to satisfy the second step (direct financial

benefit).  Our standard imposing individual liability requires plaintiff to do more than simply state Defendant Kraynak is the sole shareholder. Plaintiff must prove a direct financial benefit by illustrating that the airing of plaintiff's program acted as a draw for customers.  In this regard, plaintiff has failed.

Thus, plaintiff's inability to prove the infringing material acted as a draw for customers is fatal to their claim that Defendant Kraynak received a direct financial benefit from broadcasting plaintiff's program.[4] Accordingly, the court will not hold Defendant Chris Kraynak individually liable for the Section 605(a) violation.

**Conclusion**

For the reasons stated above, plaintiff's motion for summary judgment will be granted, in part, and denied, in part, and defense counsel's motion to withdraw will be denied.  Plaintiff's summary judgment motion will be granted with respect to Section 605(a) liability against the corporation Nak's by the Tracks.  The motion will be denied with respect to enhanced damages and individual liability against Defendant Chris

---

[4]Contra Cibulka, 2011 WL 3273058 at *1 n.4 (finding advertisements of infringing activities on a large billboard outside a bar with drink and food specials is evidence of a draw for customers).

18

Kraynak.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J & J SPORTS PRODUCTIONS, INC.,** | : | **No. 3:10cv2486** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CHRIS KRAYNAK, and NAK'S BY** | : | |
| **THE TRACKS** *d/b/a* **KNACK AT THE** | : | |
| **TRACKS** *a/k/a* **NAK'S BY THE** | : | |
| **TRACKS,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 22nd day of January 2013, upon consideration

of plaintiff's motion for summary judgment (Doc. 26), it is hereby

**ORDERED** that the motion is **GRANTED**, in part, and **DENIED**, in part, as

follows:

1. The motion is **GRANTED** with respect to Section 605(a) liability

   against the corporation Nak's by the Tracks.  **JUDGMENT** is entered

   in favor of J & J Sports Prods., Inc. and against Nak's by the Tracks,

   in the amount of $6,600.00 plus interest in accordance with 47

   U.S.C. § 605(e)(3)(c)( i)(II).

2. Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff shall have fourteen

   (14) days from the date of this order to submit its litigation costs and

an itemized list of attorney's fees.  Defendants shall then have fourteen (14) days from the date of plaintiff's cost and fee filing to file objections.

3.  The motion is **DENIED** with respect to enhanced damages and individual liability against Defendant Chris Kraynak.

4.  The motion of defendants' counsel to withdraw as attorney (Doc. 35) is **DENIED**.

5.  The Clerk of Court is directed to close this case.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**